## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| Florida Fasteners Direct, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>J. M. Fastener World, Inc.,<br><br>               Defendant. | Case No. 8:25-CV-03187<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION UNDER LANHAM ACT, FALSE ADVERTISING, DECEPTIVE AND UNFAIR TRADE PRACTICES AND COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Florida Fasteners Direct, LLC ("Plaintiff" or "Florida Fasteners"), for its claims and relief against Defendant J. M. Fastener World, Inc. ("Defendant" or "J.M. Fastener"), alleges as follows:

## NATURE OF THE ACTION

1.    This action arises out of Defendant's unlawful acts constituting trademark infringement under 15 U.S.C. § 1114, trade dress infringement under 15 U.S.C. § 1125(a)(1)(A), passing off and unfair competition under 15 U.S.C. § 1125(a)(1)(A), false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), as well as state law claims, for Unfair and Deceptive Trade Practices and unfair competition under Florida's Unfair and Deceptive Trade Practices Act, Florida Statutes § 501.201, et seq.

**PARTIES**

2.      Florida Fasteners is a limited liability company organized under the laws of the State of Florida that has its principal place of business in Naples, Florida.

3.      J.M. Fastener is a corporation incorporated under the laws of Florida that has its principal place of business at 306 Gandy Road Auburndale, Florida 33823.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

5.      This Court has personal jurisdiction over Defendant because Defendant is domiciled in this district, conducts continuous and systematic business in this district, placed infringing products in the stream of commerce directed to residents of this district, derived commercial benefits from the sale of infringing products using the infringing mark, and caused injuries to Plaintiff within the Middle District of Florida.

6.      Venue is proper under 28 U.S.C. §§ 1391(b)-(c) because Defendant is domiciled in this judicial district, Defendant's principal place of business is located in this judicial district, and a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and venue is also proper under 28 U.S.C. § 1400(b) because Defendant committed acts of infringement in this judicial district.

**BACKGROUND**

I.      **Florida Fasteners**

7.      Founded in 2009, Florida Fasteners is a Florida-based company known for its premium, corrosion-resistant fasteners and screws for pool enclosures and

lanais. Their precision-engineered products offer superior strength and durability, providing customers with reliable performance in demanding weather.

8.     The founders of Florida Fasteners, originally from the United Kingdom, saw an opportunity to create a unique product for pool cages and lanais.

9.     Florida Fasteners developed a bi-hex nylon headed screw that features a unique, distinctive, and nonfunctional design.

10.     Florida Fasteners spent months researching, developing and investing in their product to ensure exceptional durability and a visually appealing design, which would eventually be sold under their NYLO-TEC trademark.

11.     The development process involved months of design and development where Florida Fasteners experimented with various types of screw heads, screw types, and coating.

12.     The industry standard for pool cage enclosure fasteners is to use a screw with a hex head and for all screws to be coated, most commonly a ceramic coating. Lanais are either brown or white, so lanai screws are usually painted brown or white to match the lanai aluminum frame. The screw heads are visible, so only the screw heads must be painted brown or white, whereas the threaded shank does not need to be painted because it fits within the frame and is invisible once installed.

*Development of Florida Fasteners Distinct Fasteners and Screws*

13.     Florida Fasteners designed a unique nylon headed steel screw with a bi-hex head with colored ceramic painted threaded shanks. As a design choice, Florida Fasteners chose to paint the threaded shanks in the colors silver, red, blue, and green to distinguish their NYLO-TEC screws from other screws in the marketplace.

14.     Adding color to the screw is purely a design decision, since the threaded shanks are hidden once installed and the chosen color serves no function. This feature helps Florida Fasteners distinguish itself in the market.

3

15.   Florida Fasteners' nylon headed screw went through years of testing for resistance to and durability from ultraviolet radiation ("UV") to calculate the specific UV treatment to avoid sun damage and color fading.

16.   Florida Fasteners invested at least $100,000 in the research, development, and testing of their nylon bi-hex headed steel screws over a period of five years, which included three years prior to founding the company.

17.   Florida Fasteners' red NYLO-TEC screw is their most popular screw, which consists of color RAL (the European color standard, which stands for Reichs-Ausschuß für Lieferbedingungen und Gütesicherung) 3013 for the threaded shanks.

18.   Upon information and belief, no other nylon headed screw manufacturer sells screws with color painted threaded shanks, specifically in red.

19.   The unique appearance of Florida Fasteners' NYLO-TEC screws are recognizable as the trade dress of Florida Fasteners because the screws include the design elements of a nylon bi-hex head, red color coated steel threaded shanks, and the NYLO-TEC products are linked to the same color red in the product packaging and the NYLO-TEC logo.

20.   Specifically, Florida Fasteners has trade dress rights in the overall look, design, and appearance of the NYLO-TEC screws. This design consists of the distinctive, non-functional features of the color combinations of the steel threaded shanks, red NYLO-TEC logo, and product packaging, specifically, the use of RAL 3013 red and the relationship of the color features to the other features of the screws, the NYLO-TEC logo, and the product packaging. (the "NYLO-TEC Trade Dress").

*Florida Fasteners' Launches NYLO-TEC and Establishes Its Market Presence*

21.   Florida Fasteners began selling their unique screws, with their unique colored designs, and under the trademark NYLO-TEC in commerce on April 1,

2011, and has continuously engaged in the design, development, promotion, and sale of their NYLO-TEC screws.

22.    Specifically, Florida Fasteners sells their products through the following channels: distributors, resellers and retailer, contractors, e-commerce, and directly to customers. Distributors can purchase Florida Fasteners' NYLO-TEC screws directly from Florida Fasteners and will sell the NYLO-TEC screws on Florida Fasteners' behalf. Resellers and retailers purchase the NYLO-TEC screws from Florida Fasteners, who then sell to contractors and to customers. The Resellers are positioned in the same market as Florida Fasteners but need to buy Florida Fasteners' products to sell them because Florida Fasteners is the source of the NYLO-TEC screws.

23.    Well-known retailers such as Home Depot, Lowes, and Ace Hardware have and/or continue to sell Florida Fasteners' NYLO-TEC screws as authorized retailers. Contractors go directly to Florida Fasteners or to a distributor, reseller, retailer, or ecommerce to purchase the NYLO-TEC screws. Customers can purchase the NYLO-TEC screws directly from Florida Fasteners or one of their distributors, resellers, retailers, or ecommerce sellers.

24.    Florida Fasteners sells their products to  different types of consumers from the average consumer (like homeowners) to contractors, resellers and retailers, and distributors.

25.    While Florida Fasteners has authorized sales through their distributors and resellers, Florida Fasteners has never authorized J.M. Fastener to use the NYLO-TEC trademark or NYLO-TEC Trade Dress.

26.    Through its exclusive and extensive promotion and use of the NYLO-TEC Trade Dress and trademark, Florida Fasteners has become a well-known indicator of the origin and quality of the NYLO-TEC screws. The NYLO-TEC Trade

Dress have also acquired substantial secondary meaning in the marketplace among both homeowner consumers and contractor consumers.

27.    Since its inception, Florida Fasteners has invested significant time and money in its advertising and marketing expenditures. Florida Fasteners primarily relies on internet marketing and advertising including but not limited to Google Search Ads, Email Ads, and Facebook Ads.

28.    And since November 2011, Florida Fasteners also advertised their NYLO-TEC product on television in Florida. . More recently, Florida Fasteners had an updated televised commercial for their NYLO-TEC screws run in Florida from February 2018 to April 2018 on various networks such as CNN, MMBC, HGTV, and ZCFN, which was so successful the televised commercial continued to run on these networks at no additional cost. Florida Fasteners currently has an ongoing televised commercial advertisement on Comcast in Florida.

29.    As discussed in more detail below, Florida Fasteners owns the trademark rights in the NYLO-TEC product name.

**b.    The NYLO-TEC Trademark**

30.    Florida Fastener owns all intellectual property associated with the NYLO-TEC trademark.

31.    Since at least 2011, Florida Fasteners has been using, and continues to use, throughout the United States, the distinctive NYLO-TEC trademark to distinguish Florida Fasteners' products from those promoted, distributed, and sold by others.

32.    For over fourteen years, Florida Fasteners has extensively, continuously, and exclusively promoted and used the NYLO-TEC trademark throughout the United States through digital, broadcast, and print media, including, but not limited to, national, regional, and local print publications, television, and the Internet.

33.    Florida Fasteners' registered trademarks, common law trademarks, and use in a manner analogous to trademark and service mark use are hereinafter referred collectively as the "Florida Fasteners Marks."

34.    Florida Fasteners owns an incontestable federal trademark for NYLO-TEC which was applied for on December 6, 2019, which was registered with the United States Patent and Trademark Office on July 14, 2020, under U.S. Reg. No. 6,100,043 (the "NYLO-TEC Trademark"). Florida Fasteners' trademark registration covers "Screws of metal; Metal screws; Metal components for metal protective and security window shutters, namely, slats, shutterboxes, side frames, end caps, crank handles, pull straps, side tracks, ball bearings and installation hardware, namely, rollers, rails, cables, carriers, pins, locks, clips, brackets and screws; Metal fasteners, namely, self-drilling and self-tapping screws" in International Class 6.

35.    A copy of the registration certificate for the NYLO-TEC Trademark is attached to this Complaint as Exhibit A.

36.    The registration for the NYLO-TEC Trademark is valid and subsisting and record title is in the name of Florida Fasteners.

37.    Florida Fasteners' trademark registration is incontestable and is conclusive evidence of the validity of Florida Fasteners' registration and their exclusive right to use the NYLO-TEC Trademark in commerce in connection with the goods specified in the registration under 15 U.S. Code § 1115(b) and 15 U.S.C. § 1057(b); and are constructive notice of Florida Fasteners' claim of ownership under 15 U.S.C. § 1072.

38.    Because of Florida Fasteners' substantially exclusive and continuous use of the NYLO-TEC Trademark, the previously identified registration, its promotion and advertising, and the high quality of Florida Fasteners' products, Florida Fasteners has acquired valid and enforceable trademark rights in the NYLO-

TEC Trademark, and the mark is associated with the valuable goodwill of Florida Fasteners.

39.    As a result of Florida Fasteners' extensive sales, revenues, and advertising expenditures associated with its NYLO-TEC Trademark, and longstanding use and exposure of the mark for screws and fasteners, the NYLO-TEC Trademark has become exclusively associated with Florida Fasteners, and Florida Fasteners has acquired an eminent reputation therein.

40.    Long before J.M. Fastener began their infringing activities complained of with this complaint, the NYLO-TEC Trademark had been used for an extended period of time by Florida Fasteners in interstate commerce to identify and distinguish Florida Fasteners' high-quality products.

41.    The NYLO-TEC Trademark has never been assigned or licensed to J.M. Fasteners.

42.    The NYLO-TEC Trademark is a symbol of Florida Fasteners' quality, reputation and goodwill and has never been abandoned.

43.    Florida Fasteners has carefully monitored and policed the use of their NYLO-TEC Trademark.

44.    As a result of Florida Fasteners' efforts, members of the consuming public readily identify products bearing or sold under the NYLO-TEC Trademark and Florida Fasteners Marks as originating from Florida Fasteners.

45.    As a result of Florida Fasteners' extensive advertising and promotion, the NYLO-TEC Trademark has acquired substantial goodwill and are intellectual property rights of considerable value.

c.    **The NYLO-TEC Trade Dress**

46.    Florida Fastener also owns all intellectual property associated with the NYLO-TEC Trade Dress, including, but not limited to the red color painted threaded shanks (the "Design Specifications").

47.    Florida Fasteners has extensively, continuously, and exclusively promoted and used the NYLO-TEC Trade Dress, including the red color painted threaded shanks for the NYLO-TEC screws for over fourteen years throughout the United States.

48.    Specifically, Florida Fasteners' Design Specifications include the overall look, design, and appearance of the NYLO-TEC screws, which consists of the distinctive, non-functional features of the color combinations of the steel threaded shanks, specifically, the use of RAL 3013 red and the relationship of the color features to the other features of the screws, as depicted below.



49.    The use of RAL 3013 colored ceramic coating that is specific to Florida Fasteners' NYLO-TEC Trade Dress is not essential to the use or purpose of the product and does not affect the quality of the products.

50.    Florida Fasteners' Design Specifications do not serve an economic advantage to save on manufacturing costs given that the threaded shank of the NYLO-TEC screws are not visible once they are installed and the industry standard is to have the nylon head in either white or brown. In fact, Florida Fasteners' Design Specifications adds manufacturing costs by painting the threaded shanks red, which is unnecessary to the use or purpose of the product.

51.    The NYLO-TEC's unique Design Specifications serve no functional purpose. Florida Fasteners came out with the Design Specifications to differentiate itself from competitors and to become known in the minds of consumers as a source of high-quality, reliable, screws.

52.    Florida Fastener invested significant time, effort, and money in developing, researching, and creating the NYLO-TEC screws and selecting a high-quality screw manufacturer.

53.    Florida Fastener also invested significant time, effort and money in the creation and advertising of their NYLO-TEC Trade Dress. For example, Florida Fasteners' NYLO-TEC screws are frequently associated with the color red, with the NYLO-TEC logo displayed in red, and multiple uses of the color red on their advertising materials and product packaging. Examples of Florida Fasteners' NYLO-TEC Trade Dress are depicted below.











54.    As a result, consumers immediately recognize the color red with Florida Fasteners' NYLO-TEC screws. In fact, the red color is so recognized by customers that if the screws need to be replaced, a customer will see the red color coated threaded shank and know that they need to call Florida Fasteners for a replacement.

55.    The Design Specifications and high-quality manufacturer allowed Florida Fasteners to offer its customers unique high-quality screws as compared to its competitors.

56.    As a direct result of Florida Fasteners' distinctive and nonfunctional Design Specifications, consumers have come to recognize the NYLO-TEC screws as emanating from Florida Fasteners. Such widespread recognition led to Florida Fasteners selling over 120 million NYLO-TEC screws nationwide and throughout Florida to date.

57.    As a result of Florida Fasteners' continuous and exclusive use of the NYLO-TEC Trade Dress, and Florida Fasteners' marketing and advertising expenditures, the substantial sales of the NYLO-TEC screws, and the resulting secondary meaning, and highly valuable goodwill acquired as a result, Florida Fasteners owns trade dress rights in the design and appearance of the NYLO-TEC Trade Dress, which consumers have come to uniquely associate with Florida Fasteners.

58.    Similarly, Florida Fasteners has extensively, continuously, and exclusively promoted and sold their uniquely designed screws under the trademark NYLO-TEC for over fourteen years throughout the United States.

59.    The NYLO-TEC Design Specifications are more complex than other screws used with pool enclosures and lanais and requires more careful craftsmanship than that required to manufacturer simpler screw designs.

**d.      Florida Fasteners' Discovers Infringement and Takes Swift Action**

60.     In early September 2025, a distributor alerted Florida Fasteners after mistakenly believing that J.M. Fastener was now a distributor of Florida Fasteners' NYLO-TEC screws. This tip-off led Florida Fasteners to uncover that J.M. Fastener was using the NYLO-FAST Trademark and using Florida Fasteners' identical trade dress.

61.     When Florida Fasteners discovered a false indication of actual confusion, Florida Fasteners took prompt steps to investigate.

62.     On September 22, 2025, Florida Fasteners purchased various NYLO-FAST products from J.M. Fastener and received the products the very next day. A





scanned copy of J.M Fastener's invoice sent to Florida Fasteners for their purchased NYLO-FAST products is provided below.

63.    Upon receiving the NYLO-FAST products, Florida Fasteners inspected the products and invoice and discovered striking similarities to NYLO-TEC.

64.    First, the item number includes the letters "NLT" followed by the specific part numbers. The use of NLT as J.M. Fastener's model designation for their NYLO-FAST products creates a false impression that the products are associated or affiliated with Florida Fasteners' NYLO-TEC screws (emphasis added).

65.    Second, the NYLO-FAST products share identical features as Florida Fasteners' NYLO-TEC products, including that the nylon bi-hex head and color coated steel threaded shanks were identical.

66.    In response, Florida Fasteners sent a cease-and-desist letter to J.M. Fastener on October 6, 2025 requesting that J.M. Fastener immediately cease and desist the use of the NYLO-FAST mark and to cease and desist the use of Florida Fasteners' trade dress. See, Exhibit B.

67.    On October 20, 2025, J.M. Fastener finally responded, suggesting that the trade dress was functional and asserting that the trademark infringement claim was weak. See, Exhibit C.

68.    In response, Florida Fasteners decided to file this Complaint in an attempt to halt the continuing infringing activities and associated injury as expeditiously as possible.

## II.    J.M. Fastener's Infringing Activities

69.    J.M. Fastener was founded in 1980 and represents itself as a wholesale aluminum and fastener distributor.

70.    J.M. Fastener is a Florida corporation that was incorporated on May 5, 1987.

71.    J.M. Fastener's principal address is located at 306 Gandy Road, Auburndale, FL 33823.

72.    On information and belief, Mr. James Monaco is the President and Mr. Jason Monaco is the Vice President of J.M. Fastener.

73.    J.M. Fastener relies on online advertising, including by way of its website (https://jmfastenerworld.com/), social media advertising on Facebook, as well as print marketing materials.

74.    J.M. Fastener has infringed and continues to infringe on Florida Fasteners' NYLO-TEC Trademark and Trade Dress.

### a.    J.M. Fastener's Infringing Trademark

75.    J.M. Fastener has infringed and continues to infringe on Florida Fasteners' NYLO-TEC Trademark since 2025, by using the mark "NYLO-FAST" on their printed marketing materials.

76.    In the beginning of September 2025, Florida Fasteners discovered that J.M. Fastener began purposefully advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing into the United States

screws and fasteners under the NYLO-FAST trademark in violation of Florida Fasteners' intellectual property rights in the NYLO-TEC Trademark (the "Infringing NYLO-FAST Trademark").

77.   J.M. Fastener's printed marketing materials is shown here:



78.    J.M. Fastener's printed marketing materials show J.M. Fastener's use of the NYLO-FAST mark in connection with the sale of screws.  J.M. Fastener has infringed and continue to infringe on Florida Fasteners' NYLO-TEC Trademark, by using the Infringing NYLO-FAST Trademark on their online social media marketing on the J.M. Fastener Facebook page (https://www.facebook.com/p/JM-Fastener-World-Inc-100057614681174/), which is depicted below.



79.    J.M. Fastener's September 25, 2025 Facebook post uses the Infringing NYLO-FAST Trademark to advertise the infringing products and also states "[b]uy from the source" to mislead consumers into believing J.M. Fastener is an authorized seller of Florida Fasteners or somehow associated or affiliated with Florida Fasteners.

80.    J.M. Fastener's use of the Infringing NYLO-FAST Trademark started nearly over fourteen years after Florida Fasteners' first use of the NYLO-TEC Trademark.

81.    While not identical, the marks are substantially similar because both contain the dominant and identical NYLO element, and J.M. Fastener incorporates

the non-distinctive, descriptive element, FAST, as a shortened version of FASTENER. J.M. Fastener's use of the additional non-distinctive FAST element does not diminish or mitigate any likelihood of confusion with Florida Fasteners' NYLO-TEC Trademark.

82.    J.M. Fastener's Infringing NYLO-FAST Trademark is used in connection with the sale of goods that are identical to those sold under Florida Fasteners' NYLO-TEC goods – metal screws and fasteners.

83.    Through its actions, J.M. Fastener endeavors to confuse consumers into believing that its screws and fasteners sold under the Infringing NYLO-FAST Trademark are associated with, affiliated with, sponsored by, or approved by Florida Fasteners when they are not. J.M. Fastener's actions are unlawful and must be stopped immediately.

84.    Even with just a quick glance, one can see that J.M. Fastener intended to cause consumer confusion, mistake, or deception as to the origin, sponsorship, connection, association, and/or affiliation of the Infringing NYLO-FAST Trademark, at least by creating the false and misleading impression that the Infringing NYLO-FAST Trademark is authorized by, or otherwise associated with Florida Fasteners for the purpose of trading on Florida Fasteners' goodwill and reputation.

**b.    J.M. Fastener's Infringing Product and Packaging**

85.    J.M. Fastener not only uses a confusingly similar trademark to Florida Fasteners' NYLO-TEC Trademark but also sells screws that use the same unique Design Specifications and substantially similar product packaging of Florida Fasteners' NYLO-TEC Trade Dress.

86.    In the beginning of September 2025, Florida Fasteners discovered that J.M. Fastener began purposefully advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing into the United States

products that consisted of the same design as the NYLO-TEC Trade Dress under the NYLO-FAST trademark in violation of Florida Fasteners' intellectual property rights in the NYLO-TEC Trade Dress (the "Infringing Products").

87.    J.M. Fastener's sale of the Infringing Products was nearly over fourteen years after Florida Fasteners' development and sale of their products under the NYLO-TEC Trade Dress.

88.    Not only is J.M. Fastener using the Infringing NYLO-FAST Trademark, but the trademark is used in connection with the sale of screws that are identical to Florida Fasteners' NYLO-TEC screws. Specifically, the J.M. Fastener NYLO-FAST screw designs consist of a bi-hex nylon headed screw with the threaded shanks painted in the exact same shade of red as Florida Fasteners' NYLO-TEC Trade Dress protected red screws. J.M. Fastener's NYLO-FAST screws are depicted below:

 

89.    Additionally, J.M. Fastener is also using the same product packaging in connection with the Infringing Product and Infringing NYLO-FAST Trademark. Specifically, J.M. Fastener's Facebook post from September 25, 2025 shows J.M.

Fastener's advertisement for the NYLO-FAST screws contained in dark (brown or black) boxes with red text and designs. This is substantially similar to Florida Fasteners' product packaging which consists of a dark brown box and the red details, including the red NYLO-TEC Trademark. Such product packaging, specifically consisting of red details and the red NYLO-TEC Trademark and logo, as well as the red color coated threaded shanks are essential elements of Florida Fasteners' NYLO-TEC Trade Dress. J.M. Fastener's NYLO-FAST product packaging identified in their Facebook post and Florida Fasteners' product packaging are depicted below:





90.    The Florida Fasteners' NYLO-TEC screws that J.M. Fastener intentionally chose to copy are Florida Fasteners' most popular NYLO-TEC screw and the color is one that is most commonly requested by Florida Fasteners' customers.

91.    J.M. Fastener's NYLO-FAST screws are an identical copy of Florida Fasteners' NYLO-TEC screws, not only based on design, but also Florida Fasteners' unique color schemes. See the comparisons below:

| Florida Fasteners NYLO-TEC | J.M. Fastener NYLO-FAST |
|---|---|
|  |  |

92. Because Florida Fasteners' use of RAL 3013 colored ceramic coating in their NYLO-TEC Trade Dress is not essential to the use or purpose of the product and does not affect the cost or quality of the products, there is no other reason for J.M. Fastener's blatant use of the similar or same colored coating on the threaded shank other than to mislead consumers as to the origin of source of the Infringing Products.

93. Through its actions, J.M. Fastener endeavors to confuse consumers into believing that its screws are associated with, affiliated with, sponsored by, or approved by Florida Fasteners when they are not. J.M. Fastener's actions are unlawful and must be stopped immediately.

94. J.M. Fastener's use of the Infringing NYLO-FAST Trademark in connection with the Infringing Products has already caused and will continue to cause actual confusion with consumers.

95.    Even with just a quick glance, one can see that J.M. Fastener intended to evoke a nearly identical look and feel to that of Florida Fasteners' NYLO-TEC screws and red product packaging.

a.    **J.M. Fastener's Infringement Was Willful**

96.    Upon information and belief, at all times relevant hereto, J.M. Fastener had full knowledge of Florida Fasteners' ownership of the NYLO-TEC Trademark and Trade Dress, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

97.    J.M. Fastener has full knowledge of Florida Fasteners and has known of Florida Fasteners for at least the past ten years. Florida Fasteners offered distributor/reseller opportunities to J.M. Fastener at least twice a year for ten years. In doing so, a Florida Fasteners sale manager contacted J.M. Fastener with the hopes to establish a distributor relationship wherein J.M. Fastener would be an authorized distributor or reseller of Florida Fasteners' NYLO-TEC screws – an offer that J.M. Fastener continuously rejected. Upon information and belief, a representative of Florida Fasteners provided marketing materials for the NYLO-TEC screws to J.M. Fastener during one or more of such interactions with J.M. Fastener.

98.    Upon information and belief, J.M. Fastener is actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale their NYLO-FAST screws with the knowledge and intent that such products will be mistaken for the genuine high-quality products offered by Florida Fasteners despite J.M. Fastener's knowledge that they are without authority to use the NYLO-TEC Trademark and Trade Dress.

99.    In fact, J.M. Fastener's printed marketing materials identified in paragraph 77 advertise the sale of their NYLO-FAST and WEATHER-TEC products. Rather than infringing Florida Fasteners' NYLO-TEC Trademark, J.M.

Fasteners could have utilized the WEATHER-TEC mark in connection with their screws, but intentionally chose not to.

100.   J.M. Fastener had numerous opportunities to become an authorized distributor or reseller of Florida Fasteners' NYLO-TEC screws, but instead misappropriated Florida Fasteners' NYLO-TEC Trademark and Trade Dress.

101.   The misappropriation of Florida Fasteners' NYLO-TEC Trademark and Trade Dress is a proximate cause of harm to Florida Fasteners.

102.   J.M. Fastener is engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Florida Fasteners' rights for the purpose of trading on Florida Fasteners' goodwill and reputation.

103.   Florida Fasteners is suffering irreparable and indivisible injury and has suffered substantial damages as a result of J.M. Fastener's unauthorized and wrongful use of the NYLO-TEC Trademark and Trade Dress. If J.M. Fastener's intentional infringing, unfairly competitive activities, and their illegal marketplace enterprise, are not preliminarily and permanently enjoined by this Court, Florida Fasteners and the consuming public will continue to be harmed.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>

**(Federal Trademark Infringement Under 15 U.S.C. § 1114)**

104.   Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 103 as though fully set forth herein.

105.   Florida Fasteners is the owner of a valid and enforceable federal trademark registration for the NYLO-TEC Trademark.

106.   Florida Fasteners' NYLO-TEC Trademark is distinctive and has been used in commerce and widely advertised throughout the United States and is

instantly recognizable by consumers as a symbol of Florida Fasteners and its products.

107.    Florida Fasteners sells metal screws and fasteners under their federally registered trademark for NYLO-TEC.

108.    J.M. Fastener has infringed and will continue to infringe Florida Fasteners' NYLO-TEC Trademark by intentionally copying and incorporating elements of the mark into its Infringing NYLO-FAST Trademark.

109.    J.M. Fastener adopted and is using its Infringing NYLO-FAST Trademark with actual and constructive knowledge of Florida Fasteners' prior rights in the NYLO-TEC Trademark.

110.    Upon information and belief, through their website and social media pages, Defendant directs their business activities towards consumers throughout the United States and within this District to intentionally confuse consumers regarding the association or affiliation of the Infringing NYLO-FAST Trademark with Florida Fasteners.

111.    J.M. Fastener's use of its Infringing NYLO-FAST Trademark is without Florida Fasteners' consent or authority and began after the dates of Florida Fasteners' first use of the NYLO-TEC Trademark.

112.    J.M. Fastener's use of the Infringing NYLO-FAST Trademark has caused, and is likely to cause, confusion, mistake, or deception as to the source, origin, or sponsorship of J.M. Fastener's goods. J.M. Fastener's use of the Infringing NYLO-FAST Trademark is likely to induce customers to believe, contrary to fact, that J.M. Fastener's goods are affiliated, sponsored, offered, approved by, or connected with Florida Fasteners.

113.    J.M. Fastener's acts have been and are being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Florida Fasteners.

114. J.M. Fastener's use of its Infringing NYLO-FAST Trademark constitutes trademark infringement in violation of 15 U.S.C. § 1114.

115. As a direct and proximate result of J.M. Fastener's acts of trademark infringement, Florida Fasteners has been and is continuing to be damaged. Florida Fasteners is therefore entitled to recover J.M. Fastener's profits pursuant to 15 U.S.C. § 1117(a)(1).

116. J.M. Fastener's acts are willful and done with the intention of causing confusion, mistake, or deception. Additionally, J.M. Fastener has actual and constructive knowledge of Florida Fasteners' rights, which, in part, demonstrates their wrongful acts are undertaken in bad faith.

117. J.M. Fastener's willful and intentional acts violate 15 U.S.C. § 1114, and entitle Florida Fasteners to recover from J.M. Fastener three times the amount of J.M. Fastener's profits awarded pursuant to 15 U.S.C. § 1117(a)(1).

118. This is an exceptional case entitling Florida Fasteners to recover its reasonable attorneys' fees in an amount to be determined at trial pursuant to 15 U.S.C. § 1117(a).

119. J.M. Fastener intends to continue selling their Infringing Products while infringing on Florida Fasteners' intellectual property rights. J.M. Fastener will continue to do so unless restrained by this Court.

120. J.M. Fastener's acts of trademark infringement, and intention to continue infringe, caused, and will continue to cause, damage to Florida Fasteners' business reputation and goodwill, and unless restrained and enjoined, will continue to irreparably impair the value of Florida Fasteners' NYLO-TEC Trademark for which there is no adequate remedy at law. Accordingly, Florida Fasteners is entitled to preliminary (including an immediate temporary restraining order (TRO)) and permanent injunctive relief prohibiting J.M. Fastener from using the Infringing NYLO-FAST Trademark.

## COUNT II

## (Trade Dress Infringement Under 15 U.S.C. § 1125(a)(1)(A))

121. Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 120 as though fully set forth herein.

122. The foregoing acts and conduct by J.M. Fastener constitutes unfair competition, false designation of origin, or false or misleading description of fact, all of such unlawful conduct, in violation of 15 U.S.C. § 1125(a).

123. J.M. Fastener's advertisement, marketing, promotion, offers to sell, sales and distribution in interstate commerce of the Infringing Product, in direct competition with Florida Fasteners, constitutes trade dress infringement under 15 U.S.C. § 1125(a), at least because J.M. Fastener's use of Florida Fasteners' NYLO-TEC Trade Dress, namely the use of the exact colored coating for the threaded shanks is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, connection, association, and/or affiliation of J.M. Fastener's Infringing Products, at least by creating the false and misleading impression that J.M. Fastener's Infringing Products are manufactured by, authorized by, or otherwise associated with Florida Fasteners.

124. Florida Fasteners' NYLO-TEC Trade Dress is entitled to protection under 15 U.S.C. § 1125(a). Florida Fasteners' NYLO-TEC Trade Dress includes unique, distinctive, and non-functional color coated threaded shanks. Florida Fasteners has extensively and continuously promoted and used its trade dress in the United States and the State of Florida.

125. Through that extensive and continuous use (spanning more than fourteen years), Florida Fasteners' NYLO-TEC Trade Dress has become a well-known indicator of the origin and quality of Florida Fasteners' products. Florida Fasteners' NYLO-TEC Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Florida Fasteners' NYLO-TEC Trade Dress

acquired this secondary meaning before J.M. Fastener commenced its unlawful use of Florida Fasteners' NYLO-TEC Trade Dress in connection with its Infringing Products.

126.  J.M. Fastener's use of Florida Fasteners' NYLO-TEC Trade Dress has been without authorization, intentional, purposeful, willful and wanton, malicious, and in disregard of and with indifference to Florida Fasteners' rights. J.M. Fastener's bad faith is evidenced at least by the fact that J.M. Fastener had multiple opportunities to enter into distributor and/or reseller agreements with Florida Fasteners but continuously reject such offers, that J.M. Fastener's Infringing Products are identical to Florida Fasteners' NYLO-TEC Trade Dress, and J.M. Fastener's advertising content claims that they are authorized, affiliated, or associated with Florida Fasteners.

127.  As a direct and proximate result of J.M. Fastener's infringement of Florida Fasteners' NYLO-TEC Trade Dress, Florida Fasteners has suffered, and is suffering, actual, immediate, and irreparable harm.

128.  J.M. Fastener's use of Florida Fasteners' NYLO-TEC Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Florida Fasteners for which Florida Fasteners has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Florida Fasteners and their NYLO-TEC Trade Dress and Trademark.

129.  As such, Florida Fasteners is entitled to an immediate TRO to eliminate the continuing irreparable harm by ordering J.M. Fastener to immediately stop selling the Infringing Products; immediately remove and destroy any advertising for the Infringing Products, whether in print or electronic form; immediately remove any reference to the Infringing Products from its website and any social media

accounts; and immediately cease marketing and advertising the Infringing Products across all media.

130.    Florida Fasteners is also entitled to regular course injunctive relief under 15 U.S.C. § 1116, and destruction of the infringing articles under 15 U.S.C. § 1118.

131.    In addition to injunctive relief, Florida Fasteners is entitled to recover all actual damages that it has sustained, including J.M. Fastener's profits and the costs of this action, under 15 U.S.C. § 1117.

132.    For J.M. Fastener's willful infringement and exceptional conduct, Florida Fasteners is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

## **COUNT III**

### **(Unfair Competition (Passing Off) under 15 U.S.C. § 1125(a))**

133.    Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 132 as though fully set forth herein.

134.    The foregoing acts and conduct by J.M. Fastener constitutes false designation of origin, and passing off in connection with products advertised and distributed in interstate commerce in violation of 15 U.S.C. § 1125(a).

135.    Florida Fasteners has spent significant time and money in developing its products and effectively and consistently using its NYLO-TEC Trademark and NYLO-TEC Trade Dress for over fourteen years which has led its customers to associate a certain level of quality with its NYLO-TEC marketed products, and as such Florida Fasteners has developed substantial goodwill among consumers and the public relating to its NYLO-TEC marketed products.

136.    J.M. Fastener's promotion, marketing, offering for sale, and sale of the Infringing Products under the Infringing NYLO-FAST Trademark has created and

is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Florida Fasteners or the origin, sponsorship, or approval of J.M. Fastener's Infringing Products and Infringing NYLO-FAST Trademark by Florida Fasteners.

137.   By using the Infringing NYLO-FAST Trademark in connection with the sale of the Infringing Products, which are an identical copy of the NYLO-TEC Trade Dress, J.M. Fastener has created a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

138.   J.M. Fastener's use of a visibly identical shade of red colored coating on the threaded shank that is confusingly similar to the NYLO-TEC Trade Dress without Florida Fasteners' consent in connection with the sale, offering for sale, distribution, advertising, and/or promotion of the Infringing Products constitutes a false designation of origin and passing off, tending wrongfully and falsely to describe or represent a connection between Florida Fasteners' and J.M. Fastener's products.

139.   Furthermore, J.M. Fastener's use the model designation NLT for their NYLO-FAST products, which consist of a visibly identical shade of red colored coating on the threaded shank as the NYLO-TEC Trade Dress without Florida Fasteners' consent in connection with the sale, offering for sale, distribution, advertising, and/or promotion of the Infringing Products constitutes a false designation of origin and passing off, tending wrongfully and falsely to describe or represent a connection between Florida Fasteners' and J.M. Fastener's products.

140.   J.M. Fastener's conduct constitutes misrepresentation of fact and passing off as to the origin and/or sponsorship of the Infringing Products to the general public under 15 U.S.C. §1125.

141.   J.M. Fastener's conduct has and will continue to damage Florida Fasteners' reputation and goodwill through its sales of Infringing Products which

may not have the same quality as those consumers and the general public know to expect from Florida Fasteners.

142.   Upon information and belief, J.M. Fastener had actual knowledge of Florida Fasteners' ownership and prior use of the NYLO-TEC Trade Dress prior to its infringing acts and has acted knowingly and willfully with intent to trade upon Florida Fasteners' goodwill to the detriment of Florida Fastener.

143.   As a direct and proximate result of J.M. Fastener's actions, which constitute false designation of origin, passing off, and unfair competition, Florida Fasteners has suffered and continues to suffer great and irreparable injury, for which Florida Fasteners has no adequate remedy at law.

144.   J.M. Fastener's use of Florida Fasteners' NYLO-TEC Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Florida Fasteners for which Florida Fasteners has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Florida Fasteners and their NYLO-TEC Trade Dress and Trademark.

145.   Florida Fasteners is also entitled to regular course injunctive relief under 15 U.S.C. § 1116, and destruction of the infringing articles under 15 U.S.C. § 1118.

146.   In addition to injunctive relief, Florida Fasteners has suffered and is entitled to recover all actual damages that it has sustained, including J.M. Fastener's profits and the costs of this action, under 15 U.S.C. § 1117.

147.   For J.M. Fastener's willful infringement and exceptional conduct, Florida Fasteners is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

## COUNT IV

## (False Advertising under 15 U.S.C. § 1125(a)(1)(B))

148.  Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 147 as though fully set forth herein.

149.  The foregoing acts and conduct by J.M. Fastener constitute false advertising in connection with products distributed in interstate commerce in violation of 15 U.S.C. § 1125(a).

150.  Florida Fasteners is the owner of a valid and enforceable federal trademark registration for the NYLO-TEC Trademark.

151.  Florida Fasteners' NYLO-TEC Trademark is distinctive and has been used in commerce and widely advertised throughout the United States, and is instantly recognizable by consumers as a symbol of Florida Fasteners and its products.

152.  Florida Fasteners sells metal screws and fasteners under its federally registered trademark for NYLO-TEC.

153.  J.M. Fastener has, on or in connection with its Infringing Products, used in commerce false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which, in commercial advertising or promotion, misrepresent the nature, characteristic, or qualities of J.M. Fastener's goods and/or commercial activities.

154.  J.M. Fastener's unauthorized use or confusing imitation of the NYLO-TEC Trademark and Trade Dress is knowing and willful and with the intent to trade on the goodwill Forida Fasteners has established in the NYLO-TEC Trademark and Trade Dress.

155.  J.M. Fastener's false and misleading statements have the capacity to deceive actual and potential purchasers of both Florida Fasteners' and J.M. Fastener's products and have inevitably deceived the public.

156.    J.M. Fastener's conduct is willful and constitutes false or misleading advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Florida Fasteners has suffered injury caused by J.M. Fastener's unlawful conduct, including loss of goodwill and diversion of potential sales.

157.    J.M. Fastener's conduct is ongoing, is causing irreparable injury to Florida Fasteners and will continue to both damage Florida Fasteners and deceive the public unless enjoined by this Court.

158.    Florida Fasteners has no adequate remedy at law.

159.    As such, Florida Fasteners is entitled to injunctive relief under 15 U.S.C. § 1116, and destruction of the advertisements under 15 U.S.C. § 1118.

160.    In addition to injunctive relief, Florida Fasteners is entitled to recover all actual damages that it has sustained, including J.M. Fastener's profits and the costs of this action, under 15 U.S.C. § 1117.

161.    For J.M. Fastener's willful infringement and exceptional conduct, Florida Fasteners is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

## COUNT V

### (Deceptive and Unfair Trade Practices under Fla. Stat. § 501.201 et seq.)

162.    Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 161 as though fully set forth herein.

163.    J.M. Fastener's unlawful, unauthorized, and unlicensed use of Florida Fasteners' NYLO-TEC Trademark on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling, and/or otherwise dealing in Infringing Products was and is a willful and deliberate attempt to deceive, and actually has deceived, consumers and the public.

164.  As such, J.M. Fastener's actions as alleged herein constitute deceptive acts and unfair practices in the conduct of trade or commerce as defined and in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute § 501.201, et seq.

165.  As a direct result of J.M. Fastener's conduct, Florida Fasteners has suffered, and will continue to suffer damages and irreparable harm for which it has no adequate remedy at law.

166.  J.M. Fastener's conduct has harmed Florida Fasteners' reputation and goodwill in the NYLO-TEC Trademark.

167.  Pursuant to Florida Statute § 501. et seq., Florida Statute § 501.211 and Florida Statute § 501.2105, Florida Fasteners is entitled to enjoin J.M. Fasteners' unlawful conduct, as well as obtain actual damages, plus attorney's fees and court costs.

## COUNT VI

### (Florida Common Law Unfair Competition)

168.  Florida Fasteners realleges and incorporates the allegations set forth in paragraphs 1 through 167 as though fully set forth herein.

169.  Florida Fasteners has not licensed or authorized J.M. Fastener to use the NYLO-TEC Trademark or Trade Dress, and J.M. Fastener is not an authorized retailer of genuine Florida Fastener products.

170.  J.M. Fastener knowingly and intentionally trades upon Florida Fasteners' reputation and goodwill by selling and/or offering for sale the Infringing Products that are identical to Florida Fasteners' NYLO-TEC Trade Dress in connection with Florida Fasteners' NYLO-TEC Trademark.

171.  J.M. Fastener's promotion, marketing, offering for sale, and sale of the Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or

association with Florida Fasteners or the origin, sponsorship, or approval of J.M. Fastener's Infringing Products by Florida Fasteners in violation of Florida's common law of unfair competition.

172. J.M. Fastener knew, or should have known, that its promotion, marketing, offering for sale, and sale of the Infringing Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

173. J.M. Fastener's conduct is willful and intentional as evidenced at least by the fact that J.M. Fastener had multiple opportunities to enter into distributor and/or reseller agreements with Florida Fasteners but continuously reject such offers, that J.M. Fastener's Infringing Products are identical to Florida Fasteners' NYLO-TEC Trade Dress, and J.M. Fastener's advertising content claims that they are authorized, affiliated, or associated with Florida Fasteners.

174. Florida Fasteners has no adequate remedy at law, and J.M. Fastener's conduct has caused Florida Fasteners to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Florida Fasteners will suffer future irreparable harm as a direct result of J.M. Fastener's unlawful activities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Florida Fasteners Direct, LLC respectfully prays for judgment against Defendant J. M. Fastener World, Inc. as follows:

A. A temporary restraining order, enjoining J.M. Fastener, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with J.M. Fastener from:

    i. using the NYLO-TEC mark, or any other copy, reproduction, or colorable imitation, or confusingly similar version of the same, including the NYLO-FAST mark, on or in connection with the

sale of metal screws and fasteners, or otherwise competing with Florida Fasteners' products;

ii.    using any trademark, service mark, trade dress, name, logo, design, color, or source designation of any kind on or in connection with Florida Fasteners' products that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Florida Fasteners' name or the NYLO-FAST Trademark;

iii.    using any trademark, trade dress, name, logo, design, color or source designation of any kind on or in connection with J.M. Fastener's products that is likely to cause confusion, mistake, deception, or public misunderstanding that such products are produced or provided by Florida Fasteners, or is sponsored or authorized by Florida Fasteners, or is in any way connected or related to Florida Fasteners;

iv.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Infringing Products or any other products that bear an identical or confusingly similar design as protected by Florida Fasteners' NYLO-TEC Trade Dress;

v.    engaging in any other activity constituting unfair competition with Florida Fasteners by way of imitating the NYLO-TEC Trade Dress designs, or acts and practices that deceive consumers, the public, and/or trade;

vi.    committing any other act which falsely represents or which has the effect of falsely representing that J.M. Fastener's Infringing

Products are licensed, authorized, offered, produced, sponsored, or in any other way associated with Florida Fasteners.

vii.    passing off, palming off, or assisting in passing off or palming off, J.M. Fastener's products as those of Florida Fasteners, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

B.    A preliminarily injunction order, enjoining J.M. Fastener, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with J.M. Fastener from:

i.    using the NYLO-TEC mark, or any other copy, reproduction, or colorable imitation, or confusingly similar version of the same, including the NYLO-FAST mark, on or in connection with the sale of metal screws and fasteners, or otherwise competing with Florida Fasteners' products;

ii.    using any trademark, service mark, trade dress, name, logo, design, color, or source designation of any kind on or in connection with Florida Fasteners' products that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Florida Fasteners' name or the NYLO-FAST Trademark;

iii.    using any trademark, trade dress, name, logo, design, color or source designation of any kind on or in connection with J.M. Fastener's products that is likely to cause confusion, mistake, deception, or public misunderstanding that such products are produced or provided by Florida Fasteners, or is sponsored or authorized by Florida Fasteners, or is in any way connected or related to Florida Fasteners;

iv.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Infringing Products or any other products that bear an identical or confusingly similar design as protected by Florida Fasteners' NYLO-TEC Trade Dress;

v.    engaging in any other activity constituting unfair competition with Florida Fasteners by way of imitating the NYLO-TEC Trade Dress designs, or acts and practices that deceive consumers, the public, and/or trade;

vi.    committing any other act which falsely represents or which has the effect of falsely representing that J.M. Fastener's Infringing Products are licensed, authorized, offered, produced, sponsored, or in any other way associated with Florida Fasteners.

vii.    passing off, palming off, or assisting in passing off or palming off, J.M. Fastener's products as those of Florida Fasteners, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

C.    An order permanently enjoining and restraining J.M. Fastener, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with J.M. Fastener from infringing Florida Fasteners' intellectual property at issue, including but not limited to infringing acts such as:

i.    using the NYLO-TEC mark, or any other copy, reproduction, or colorable imitation, or confusingly similar version of the same, including the NYLO-FAST mark, on or in connection with the sale of metal screws and fasteners, or otherwise competing with Florida Fasteners' products;

40

ii.    using any trademark, service mark, trade dress, name, logo, design, color, or source designation of any kind on or in connection with Florida Fasteners' products that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Florida Fasteners' name or the NYLO-FAST Trademark;

iii.    using any trademark, trade dress, name, logo, design, color or source designation of any kind on or in connection with J.M. Fastener's products that is likely to cause confusion, mistake, deception, or public misunderstanding that such products are produced or provided by Florida Fasteners, or is sponsored or authorized by Florida Fasteners, or is in any way connected or related to Florida Fasteners;

iv.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Infringing Products or any other products that bear an identical or confusingly similar design as protected by Florida Fasteners' NYLO-TEC Trade Dress;

v.    engaging in any other activity constituting unfair competition with Florida Fasteners by way of imitating the NYLO-TEC Trade Dress designs, or acts and practices that deceive consumers, the public, and/or trade;

vi.    committing any other act which falsely represents or which has the effect of falsely representing that J.M. Fastener's Infringing Products are licensed, authorized, offered, produced, sponsored, or in any other way associated with Florida Fasteners.

vii.    passing off, palming off, or assisting in passing off or palming off, J.M. Fastener's products as those of Florida Fasteners, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

D.    An order requiring J.M. Fastener to recall from any distribution channels and to deliver to Florida Fasteners for destruction any Infringing Products, including the means of making such Infringing Products.

E.    An Order directing the destruction of (i) all infringing products, including the Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of Florida Fasteners' NYLO-TEC trade dress or that infringe Florida Fasteners' NYLO-TEC Trademark in J.M. Fastener's possession or control, (iii) all sketches and blueprints and other means of making the Infringing Products in J.M. Fastener's possession, custody, or control, and (iv) all advertising materials using the NYLO-TEC Trademark or a confusingly similar trademark and materials advertising the Infringing Products in J.M. Fastener's possession, custody, or control, including on the Internet, pursuant to at least 17 U.S.C. § 503;

F.    An order requiring J.M. Fastener to file with this Court and serve on Florida Fasteners within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which J.M. Fastener complied with the injunction;

G.    An order for an accounting of all gains, profits, and advantages derived by J.M. Fastener on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), Cal. Bus. & Prof. Code, § 17200 *et*

*seq*., and any other applicable federal statute or Florida state and common law;

H.    An award of damages equal to J.M. Fastener's profits and all damages sustained by Florida Fasteners as a result of J.M. Fastener's wrongful acts, and costs pursuant to 15 U.S.C. § 1117(a);

I.    An award of damages equal to treble J.M. Fastener's profits or Florida Fasteners' damages, whichever is greater, on account of J.M. Fastener's willful infringement;

J.    An award of punitive damages and Florida Fasteners' costs, attorneys' fees, and interest as allowed under all applicable federal statutes and Florida state laws; and

K.    All other relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Florida Fasteners hereby demands a jury trial on all issues so triable.


Respectfully Submitted,

*/s/ Sara K. White*
Sara K. White (trial counsel)/Fla. Bar No. 86014
Julie L. Langdon (*pro hac vice forthcoming*)
Lauren D. Konrai-Mori (*pro hac vice forthcoming*)
Porter, Wright, Morris & Arthur, LLP
9132 Strada Place, Suite 301
Naples, Florida 34108-2683
Telephone: 239-593-2958
Facsimile: 239-593-2990
E-mail:  SWhite@porterwright.com
JLangdon@porterwright.com
LKonraimori@porterwright.com
*Counsel for Florida Fasteners Direct, LLC*